UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAN D.M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C23-1469-BAT <br><br> **ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE** |

Plaintiff appeals the ALJ's decision finding him not disabled on the grounds the ALJ erroneously discounted his testimony. Dkt. 12. The parties consented to proceed before the undersigned Magistrate Judge. Dkt. 2. For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

On October 20, 2020, Plaintiff applied for benefits, alleging disability as of March 18, 2020. Tr. 338-39. His application was denied initially and on reconsideration. Tr. 94-109. The ALJ conducted a hearing on March 11, 2022, and on June 16, 2022, issued a decision finding Plaintiff not disabled. Tr. 47-93, 7-39. The Appeals Council denied review making the ALJ's decision the Commissioner's final decision. Tr. 1-6.

**DISCUSSION**

At step two, the ALJ found Plaintiff's gastroparesis and diabetes and related complications are severe impairments but discounted Plaintiff's testimony and determined Plaintiff has the residual functional capacity (RFC) to perform light work with additional postural, environmental, and cognitive limitations. Tr. 13, 15. In assessing Plaintiff's testimony, the ALJ found Plaintiff's medically determinable impairments could reasonably cause some of the symptoms alleged, and no affirmative evidence of malingering. Tr. 19. The ALJ was therefore required to provide "specific, clear and convincing reasons" to reject Plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *accord Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming the "clear and convincing" standard continues to apply).

The ALJ discounted Plaintiff's testimony regarding work absences and the degree to which he would be off-task on several grounds including: (1) the improvement of Plaintiff's diabetes with insulin, and Plaintiff's choice nonetheless not to continue with insulin treatment, Tr. 19; (2) medical evidence that Plaintiff's frequent hospitalizations were related to drug-seeking behavior, along with Plaintiff's physical examination findings, Tr. 20-21; (3) the absence of treatment by Plaintiff's gastroenterologist, Dr. Barber, from June 2021 – when Plaintiff had a gastric stimulator implanted ("implant") –through March 14, 2022, three days following Plaintiff's March 11, 2022 hearing, which the ALJ found suggested better symptom management; (4) inconsistent statements from Plaintiff on prior occasions regarding his diet and the use of over-the-counter medications for his symptoms, Tr. 21; and (5) the unknown etiology of Plaintiff's left-sided pain, and medical records suggesting Plaintiff's pain was not explained

by his gastroparesis. Tr. 20. Additionally, the ALJ noted Plaintiff's physicians disagreed about the utility of marijuana to treat his symptoms, and some of Plaintiff's providers indicated marijuana may increase his symptoms. Tr. 20.

In his opening brief, Plaintiff argues the ALJ's findings are not supported by substantial evidence, focusing largely on the ALJ's statements regarding the medical source disagreement about Plaintiff's marijuana use for pain. Dkt. 12 at 4-7. Plaintiff argues the ALJ erroneously suggested he used marijuana against his doctor's recommendations, and erroneously found marijuana aggravated his symptoms. Dkt. 12 at 4-7. The Court finds the ALJ accurately noted Plaintiff's doctors disagreed whether marijuana helped or harmed Plaintiff. However, because the ALJ did not clearly reject Plaintiff's testimony due to marijuana use, there is nothing for the Court to determine in this regard. Tr. 20.

The Court thus turns to the reasons the ALJ more explicitly set forth to discount Plaintiff's testimony.

1.  **Plaintiff's Insulin Noncompliance and Improvement with Insulin**

Plaintiff argues he is disabled due to gastroparesis, diabetic ketoacidosis, type 2 diabetes, and hypertension. *See* Opening Brief at 2. The ALJ cited the improvement of Plaintiff's diabetes with the use of insulin, and Plaintiff's failure to continue his insulin treatment as grounds to discount his testimony.[1] *See* Tr. 19. The ALJ acknowledged Plaintiff testified he failed to comply with his insulin treatment due to financial or insurance difficulties. The ALJ discounted Plaintiff's assertion because Plaintiff "received Medicaid beginning in September 2020," and instead of complying with treatment, Plaintiff "chose not to go back on insulin" until late 2021

---

[1] In late 2019 or early 2020, Plaintiff chose to discontinue insulin despite the fact his diabetes was under control while on insulin.  See Tr. 73, 1275.  Plaintiff did not go back on insulin until late 2021 – nearly two years later – after he suffered from a diabetic ulcer.  Tr. 69, 74, 1814.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE - 3

when he developed an ulcer and severe infection. Tr. 19.

Plaintiff fails to address this determination on appeal, and the ALJ's unchallenged determination is both a valid grounds to discount Plaintiff's testimony, and one supported by substantial evidence. *See Velez v. Kijakazi*, No. 18-17175, 2021 WL 4553634, at *1 (9th Cir. Oct. 5, 2021) (Plaintiff's noncompliance with diabetes treatment was clear and convincing reason for discounting Plaintiff's testimony) (citing *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded by regulation on other grounds*) (ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment in assessing a claimant's credibility).

Plaintiff's gastroparesis and diabetes are related impairments, and Plaintiff failed to follow the recommended treatment that would keep his diabetes under control. Multiple ER visits during the nearly two years that Plaintiff refused insulin were related to diabetes complications, including the post-implant ER visit in August 2021, during which Plaintiff complained of abdominal pain and was sent to the ICU after he was found to be in diabetic ketoacidosis ("DKA"). Tr. 1748. Plaintiff admitted he was not taking insulin and his diabetes was not well-controlled, and the attending physician issued "strict return [to insulin] precautions." Tr. 1748.

Additionally, there are multiple additional medical records – including ER visit records – from this same time period during which Plaintiff's diabetes is noted to be "uncontrolled." *See, e.g.,* Tr. 1694 (noting Plaintiff's uncontrolled diabetes during September 2021 ER visit); Tr. 981, 991 (noting uncontrolled diabetes during February 2020 ER visit); Tr. 1273 (Dr. Watters notes in February 2020 that Plaintiff's diabetes is uncontrolled, but that he does not want to go back on insulin); Tr. 1259-60 (attending physician diagnoses uncontrolled diabetes during September 7.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE - 4

2020 ER visit and notes that Plaintiff needs to be on insulin); Tr. 1271-73 (Dr. Watters notes in follow-up to September 2020 ER visit that Plaintiff's diabetes remains uncontrolled, yet Plaintiff is choosing not to go back on insulin); *cf.* Tr. 1798, 1808 (Plaintiff agrees to resume insulin in November 2021); Tr. 1950 (Dr. Barber observes in March 2022, that Plaintiff's blood sugars are "much better").

Accordingly, the Court concludes the ALJ provided a sufficiently specific, clear, and convincing reason supported by substantial evidence to discount Plaintiff's testimony.

### 2. Evidence of Drug-Seeking Behavior

The ALJ also rejected Plaintiff's testimony based in part on medical evidence that Plaintiff's frequent hospitalizations are related to drug-seeking behavior. Tr. 17, 20 (noting "[s]ome physicians expressed concern that his frequent hospitalizations with reports of severe pain were related to drug seeking behavior due to the lack of physical symptoms and lack of explanation for his pain on diagnostic imaging"). In support, the ALJ further noted that attending ER physicians observed a "lack of physical symptoms other than tenderness to palpation," that repeated diagnostic testing produced normal findings, and that Plaintiff's "[p]hysical examination[s] showed he exhibited normal range of motion, intact sensation, normal motor strength, and a steady gait." Tr. 20 (citing Tr. 820, 997, 1057, 1094, 1272, 1339, 2032).

The Commissioner notes because Plaintiff failed to challenge this reason in his opening brief, Plaintiff has waived the issue and argues, in any event, the ALJ's rationale should be affirmed. Dkt. 14 at 6. The Court admonishes Plaintiff that he must comply with the Court's scheduling order and raise all issues in his opening brief. Pursuant to the scheduling order, the Court may disregard issues not raised in the opening brief. However, because the Commissioner argues the ALJ's finding should be affirmed on the merits, the Commissioner is not prejudiced

1    by the Court's consideration of the issue.

2         The Commissioner argues the ALJ properly discounted Plaintiff's testimony based upon
3    drug-seeking behavior but acknowledges the ALJ did not support the finding. *See* Dkt. 14 at 5
4    (citing Tr. 660, 712, 715, 809, 820, 1734, 1693). The Commissioner, however, argues the Court
5    may consider record citations the Commissioner has proffered on appeal because they are not a
6    "new" reason but simply supports the ALJ's finding. Dkt. 14 at 6. In reply, Plaintiff addresses
7    the issue, argues the ALJ's finding is unsupported, and asserts his case is akin to *Glanden v.*
8    *Kijakazi,* 86 F.4th 838, 847 (9th Cir. 2023).

9         The *Glanden* decision does not support Plaintiff's position. In *Glanden,* the Ninth Circuit
10   held while evidence about the claimant's drug-seeking behavior – namely, the claimant's
11   "providers' suspicions" – could constitute clear and convincing reason to discount a claimant's
12   testimony *at step four* of the requisite sequential analysis, such evidence is not a clear and
13   convincing reason to reject the claimant's testimony at step two. *Id.* at 847 (emphasis added)
14   (comparing *Coleman v. Saul,* 979 F.3d 751, 756 (9th Cir. 2020), and noting drug-seeking
15   behavior "do[es] not amount to clear and convincing reasons to reject [claimant's] testimony at
16   this preliminary stage"). Here, by contrast, the ALJ discounted Plaintiff's testimony based on
17   drug-seeking behavior at step four, and the case is therefore similar to *Coleman*. *See* 979 F.3d at
18   756 (holding that ALJ's discounting of testimony based on the claimant's drug-seeking behavior
19   in the ER, along with "indications that his complaints of pain were exaggerated" was a clear and
20   convincing reason).

21        The Commissioner proffers record citations to support a finding that Plaintiff's drug-
22   seeking behavior is grounds to discount his testimony and argues her argument sets forth a
23   sufficient basis for the Court to affirm the ALJ. But where the ALJ makes no factual findings,

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE
CASE - 6

neither the Commissioner nor this Court may make substitute findings to in order to make factual determinations reserved to the ALJ at the agency level.

Here, the ALJ failed to provide adequate record support for the finding. The Court is thus left with a conclusion unsupported by factual findings. The Court thus declines to affirm this reason based upon the *post-hoc* citations provided by the Commissioner where none were referenced by the ALJ. *See Bray v. Comm'r*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).

Accordingly, because the ALJ failed to provide adequate record support regarding Plaintiff's drug-seeking behavior, the Court finds the ALJ erred.

### 3. Absence of Post-Implant Treatment with Gastroenterologist and Post-Implant Improvement

The ALJ also found Plaintiff's lack of treatment with gastroenterologist, Dr. Barber, from the time of Plaintiff's June 2021 implant through March 14, 2022, suggested Plaintiff experienced better symptom management following the implant than that to which he testified. Tr. 20. In support, the ALJ found Plaintiff's "treatment during the last few months of 2021 is unremarkable for abdominal pain[,] with the only report of pain being when he ran out of marijuana in November 2021." Tr. 20 n.3 (citing Tr. 1817-1949). The ALJ acknowledged Plaintiff "experience[d] a few exacerbations in early 2022," but found "there [was] nothing to suggest that the increase in [Plaintiff's implant] voltage will not afford more relief." Tr. 20 n.3. In support, the ALJ referenced Plaintiff's February 22, 2022 ER visit, reasoning "[w]hile [Plaintiff] was hospitalized in February 2022 for five days, the treatment records after this only note that [Plaintiff's] stimulator settings were increased, which suggests that he has not exhausted treatment for his emesis and pain." Tr. 20.

Plaintiff argues the ALJ erred because "[a]t no point [did] Dr. Barber state that Plaintiff's symptoms can be adequately controlled by the implant," pointing to Dr. Barber's March 14,

2022 letter in asserting Dr. Barber acknowledged Plaintiff continued to experience abdominal pain after the implant for which he required medical marijuana. Dkt. 12 at 9 (citing Tr. 1950). Plaintiff further contends his four post-June 2021 ER visits support Dr. Barber's statement that Plaintiff continued to suffer from abdominal pain. Dkt. 15 at 6 (citing Dkt. 12 at 8 (citing Tr. 1748, 1694, 2075, 1975)). Plaintiff also argues the ALJ's suggestion the implant resulted in improvement and there was room for further improvement was speculative as there was no medical evidence that all of Plaintiff's symptoms were or could be controlled by the implant. Dkt. 15 at 6.

The Commissioner counters the ALJ's related factual findings supported the ALJ's ultimate finding Plaintiff's gastroparesis symptoms improved following the implant. *See* Dkt. 14 at 10 (citing Tr. 1818, 1825, 1831, 1839, 1843, 1847, 1851, 1928); Tr. 20 n.3 (citing Tr. 1817-1949). The Commissioner further asserts Plaintiff misconstrues the ALJ's finding Plaintiff "has not exhausted treatment for his emesis and pain." Dkt. 14 at 11; Tr. 20. The Commissioner asserts this finding simply clarified Plaintiff's February 2022 ER visit did not show his June 2021 implant surgery failed. Dkt. 14 at 11. The Court agrees with the Commissioner on this point, and notes the ALJ did not, in fact, suggest in the decision that Plaintiff's symptoms resolved entirely after the implant. *See* Tr. 20.

The Court also finds no error in the ALJ's related finding that Plaintiff's post-implant treatment in 2021 was "unremarkable for abdominal pain." Tr. 20. That Plaintiff complained of abdominal pain, which was acknowledged by Dr. Barber in February 2022, did not negate Plaintiff's improvement post-implant; nor did the ALJ ignore the continued existence of some post-implant pain. Instead, as noted, the ALJ found Plaintiff's testimony regarding the intensity and persistence of his abdominal pain was not supported by the record.

The post-implant ER records relied on by Plaintiff also do not undermine the ALJ's findings Plaintiff experienced gastroparesis improvement post-implant. Most of the ER visit records cited in opposition by Plaintiff related to his foot ulcer and foot cellulitis, which persisted and was aggravated by Plaintiff's failure to comply with his antibiotic regimen, and complications related to Plaintiff's diabetes, which, as discussed, Plaintiff had not been treating with insulin. *See* Tr. 1748, 1694, 2075; *see also* Tr. 1818 (Plaintiff's December 2021 ER visit soon after his November 2021 visit, during which it was noted that Plaintiff failed to take the antibiotics prescribed in November 2021, thus leading to infection and requiring draining of "deep abscess," along with intravenous antibiotics).

Plaintiff's February 2022 ER visit also does not undermine the ALJ's related findings. In February 2022, Plaintiff went to the ER for gastroparesis symptoms, during which he received intravenously medication to treat his nausea and vomiting, morphine and Dilaudid for his pain, and was provided with a prescription for Norco for after his discharge. Tr. 1975-76. Plaintiff's gastric stimulator was not adjusted until his subsequent March 14, 2022 visit with Dr. Barber – the first such visit since Plaintiff's follow-up for his implant surgery in June 2021.[2] Tr. 1951-53. As the ALJ noted, although Dr. Barber adjusted Plaintiff's gastric stimulator in March 2022, Plaintiff's physical examination during that visit was normal, his gastrointestinal examination was "negative for abdominal distention and abdominal pain," and "there was no abdominal tenderness." Tr. 1951-53 (noting that "[s]timulator is interrogated and voltage turn[ed] from 5 to 7V[;] all other settings are left the same"); *see also* Tr. 19 (discussing Dr. Barber's February 2022 visit notes). Dr. Barber's letter from that same day, March 14, 2022, further states that after

---

[2] The ALJ rejected Plaintiff's suggestion he did not see Dr. Barber because he could not get an appointment, noting that there was no evidence that Plaintiff attempted to see Dr. Barber and "could not do so." Tr. 20.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE - 9

1  Plaintiff's implantation of the gastric stimulator and a pyloroplasty in June 2021, Plaintiff's

2  "blood sugars are under much better control[,] as is his nausea and vomiting."  Tr. 1950.

3        For these reasons, the Court affirms the ALJ's determination.

4        **4.     Inconsistent Statements**

5        The ALJ also cited to Plaintiff's prior statements in his medical records regarding his diet

6  and the use of over-the-counter medications for his symptoms. Tr. 21. Regarding the benefits of

7  a gastroparesis diet, the ALJ noted, contrary to Plaintiff's testimony, he previously stated he felt

8  better when following the diet, and admitted he felt worse when he failed to follow the

9  recommended diet. Tr. 21 (citing Tr. 1275, February 2020 visit notes from Dr. Watters noting

10  that Plaintiff ate a steak the previous day and had been throwing up); (citing Tr. 1634, May 2021

11  visit notes from Dr. Watters noting Plaintiff is "feeling well" and that he had been following a

12  Mediterranean diet for his diabetic gastroparesis, which "seem[ed] to be working better"); *cf.* Tr.

13  68, 71-72. The ALJ additionally noted Plaintiff had previously stated that when he took the over-

14  the-counter prescription, "Gas X," his pain was significantly better within minutes.  Tr. 21 (citing

15  Tr. 1634).

16        Plaintiff failed to address this reason on appeal, and the unchallenged reason was a

17  sufficient basis for discounting Plaintiff's testimony. *See* Dkt. 15 at 6 (stating that "Defendant

18  has not identified a specific inconsistency with Plaintiff's testimony"). Plaintiff's prior

19  statements regarding the improvement experienced by compliance with a gastroparesis diet, the

20  impact of diet noncompliance on his symptoms, and the utility of over-the-counter medications

21  for gas pain constituted specific, clear, and convincing reasons for discounting Plaintiff's

22  testimony.  *See Trevizo v. Berryhill*, 871 F.3d 664, 680 (9th Cir. 1989) (citations omitted)

23  ("[f]ailure to follow prescribed treatment may 'cast doubt on the sincerity of the claimant's pain

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE
CASE - 10

testimony'"); *see also Tommasetti,* 533 F.3d at 1039 (holding that an ALJ properly considers prior inconsistent statements in evaluating a claimant's testimony).

### 5.     Unknown Etiology of Plaintiff's Pain

Finally, the ALJ found Plaintiff's medical records did not support the degree of left-sided abdominal pain to which Plaintiff testified and pointed to diagnostic imaging and physician notes suggesting Plaintiff's "abdominal pain was not generally caused by gastroparesis." Tr. 20 (citing Tr. 2055, 1031, 1037, 1124, 1141, 1150).

Plaintiff argues the ALJ mischaracterized the record, which he contends shows his gastroparesis causes abdominal pain; he also suggests the ALJ inaccurately summarized the record evidence. Dkt. 12 at 7-8 (citing Tr. 533, 544, 1043, 1049, 1086, 1259, 1341, 1424, 1448, 1498, 1748, 2075, 1975).  The Commissioner notes, there is no dispute Plaintiff was diagnosed with gastroparesis, and he also suffered from abdominal pain. Dkt. 14 at 4. The records cited by Plaintiff, for the most part, merely confirm these undisputed facts.

The records cited by the ALJ support the ALJ's finding. *See*, *e.g.,* Tr. 2055 (Dr. Riff's November 2021 statement that "[i]t [was] difficult to define the etiology of [Plaintiff's] symptoms" and "to assess the organicity of his pain," while, in turn, noting that "[g]astroparesis is not usually associated with severe abdominal pain but rather more a fullness [and] discomfort. . . ."); *see also* Tr. 1031, 1037, 1124, 1141, 1150. There is thus a rational basis to support the ALJ's finding, and the Court cannot reweigh the evidence, even if the evidence could be viewed in a different way. *See Coleman*, 979 F.3d at 756 (even if a claimant's explanation is a rational one, we will not disturb the ALJ's differing rational interpretation where the ALJ's interpretation is adequately supported); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that

must be upheld.").

Plaintiff also argues the ALJ failed to adequately explain how his testimony was inconsistent with the medical evidence, as required by *Smartt v. Kijakazi*. Dkt. 15 at 2 (citing 53 F.4th 489). The Court disagrees. In *Smartt*, the Ninth Circuit held "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* at 499. The *Smartt* Court reasoned an ALJ is not required "to simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case." *Id.* (noting that "the standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince").

Here, the ALJ cited evidence supporting her findings about the etiology of Plaintiff's pain. Moreover, the Court notes the ALJ did not simply reject Plaintiff's testimony on the grounds the etiology of Plaintiff's pain was unclear but instead gave additional reasons which, as discussed above were valid grounds to discount Plaintiff's testimony. Hence, even if one were to say the ALJ erred in discounting Plaintiff's testimony due to the unknown etiology of his pain, the error is harmless.

In sum, the ALJ's provided legally valid reasons supported by substantial evidence to discount Plaintiff's testimony,[3] and any erroneous rationale set forth by the ALJ is harmless as they would not "negate the validity of the ALJ's ultimate credibility conclusion." *Carmickle v.*

---

[3] The Court declines to accept the additional arguments advanced by the Commissioner that were not in fact proffered as reasons by the ALJ, including the Commissioner's argument that the opinion from non-examining state agency physician, Dr. Samuel Pak, supported discounting Plaintiff's opinion. Dkt. 14 at 7-8.

*Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted).

## CONCLUSION

The Court finds the ALJ provided valid reasons supported by substantial evidence to discount Plaintiff's testimony and thus determine Plaintiff is not disabled. The Court accordingly **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

DATED this 15th day of April, 2024.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge